# Hays *versus* Briggs.

1. Briggs petitioned for a lateral railroad and a landing of 1200 feet on Hays's land ; the viewers allotted 600 feet, Hays appealed ; by permission of the court the jury allowed 835 feet. *Held*, to be error.

2. Briggs, if dissatisfied with the extent of the allotment by the viewers, should have filed exceptions ; on Hays's appeal the jury could have allotted less but not more.

3. The appeal under the Act of November 17th 1871 is confined to assessment of damages, the necessity for a landing for applicant and necessity of owner to retain the land for his own use.

4. The " landing" contemplated is for loading and unloading boats, &c., not for a harbor for them, whether empty or laden.

5. A lateral railway to a river landing may be constructed over an intervening railroad.

[Hays *v.* Briggs.]

6. A landing cannot be allotted to another when the owner requires the land and bonâ fide intends to use it, whether presently or in future.

7. In assessing damages to the owner for land taken for a lateral railway and landing, the value as ascertained from the selling price in the neighborhood is the general selling price not that of a particular sale.

8. East Penna., R. R. *v.* Heister, 4 Wright 53; Horner & Roberts's Lateral Railroad, 1 Wright 333, followed.

November 6th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county:* No. 72, to October and November Term 1873.

The proceeding in this case commenced August 5th 1871, by the petition of Thomas W. Briggs for leave to construct a lateral railroad through lands of James H. Hays and others, and to acquire a wharf or landing from said Hays's land, on pool No. 1 of the Monongahela Slack Navigation Company. It was under an Act of Assembly of April 24th 1843 and its supplements. The tenth section of the original act (Pamph. L. 361, 2 Bright. Purd. 1239, pl. 139) is as follows:—

" When the owners of any railroad, constituted under an act of this· Commonwealth, possess the landing at the termination of the said railroad, where it joins any canal or other navigation, and any lateral railroad shall be constructed to connect with said railroad, for the purpose of conveying any mineral or other productions to the said navigation, and the owners of the said landing shall refuse to permit the trade of the said lateral railroads to make use of the said landing, upon payment of a suitable compensation, it shall be the duty of the Court of Common Pleas of the proper county, upon application of the party aggrieved, to direct the sheriff to summon a jury, * * * who shall examine the premises. And if they shall find that the landings are of sufficient capacity to accommodate the trade of the lateral railroad, in addition to the trade of the main railroad, they shall mark off a portion of the land to be allotted thereto, and fix upon a compensation suitable therefor, either in fee simple or as an annual rent, or a price per ton for the use of the same, and shall make return thereof to the court, who shall thereupon, if the report be approved by them, direct the said landing to be opened to the use of the public, upon the payment of the price assessed by the said jury; an appeal to the superior (court) being allowed, as in other cases."

The Act of January 6th 1848, sect. 3, Pamph. L. 1, 2 Bright. Purd. 1240, pl. 140, provides that

" The rights and privileges as to the acquisition of landings and wharves, conferred by the tenth section of the act entitled 'An Act, &c., * * * shall be extended to all persons proceeding to procure the right to make a lateral railroad under the authority of the act to which this is a supplement, so that they shall be

[Hays *v.* Briggs.]

enabled to procure landings or wharves, for a compensation of the owner or owners of land, whether said owner or owners of land have any interest in any railroad or not; and the powers and duties conferred upon the jury authorized by the said tenth section, are hereby conferred upon the viewers who may be appointed under the authority of the said act to which this is a supplement: Provided, That no landing, wharf, privilege or franchise shall be taken from the owner thereof, if, in the opinion of the viewers aforesaid, such landing, wharf, privilege or franchise is necessary to the use and enjoyment of the owner of any mill, quarry, lime-kiln, coal-mine or other real estate adjoining any navigable stream or slackwater navigation."

The Act of February 17th, 1871, sect. 1, Pamph. L. 56, 2 Bright. Purd. 1241, pl. 147, provides that

"In all proceedings now pending, or which may hereafter be instituted, to procure the right to construct lateral railroads, or for the acquisition of wharves or landings, or for either of said purposes, the appeal to court from the report of the viewers shall extend not only to the assessment of damages, but to the question of the necessity of the proposed lateral railroad, wharf or landing, and shall also extend to the question whether such landing or wharf is necessary to the owner thereof, for his own uses or purposes; and if the jury shall so find, the same shall not be taken from him."

The petition set out that the applicant owned about 230 acres of land in Baldwin township, Allegheny county, "underlaid by a stratum of good black merchantable coal;" the land and coal were not more than six miles from the Monongahela Slackwater Navigation; that a lateral railroad was necessary for public and private purposes to connect the coal and the navigation, and that there was necessity also for a wharf or landing at the river terminus of such road; that he desired to make a lateral railroad for the purpose of such connection through the intervening land, partly underground and partly on the surface, and have allotted to him at its terminus at the Monongahela river a wharf or landing sufficient to accommodate the trade of the road; that he had "surveyed and marked upon the ground, and adopted a route upon which he desires to construct said railroad; and he had also surveyed and marked off a piece of ground for a landing or wharf, which he desires to procure as aforesaid;" that he had given due notice to James H. Hays and a large number of other persons (naming them) of his intention to file the petition; and that Hays was the owner in fee simple of the land marked off for the landing. The petition then set out the courses and distances of the proposed road, and the names of landholders through whose lands it would pass. It described also the ground surveyed for the landing, viz.: beginning on the Monongahela river, thence westwardly 80 feet,

[Hays *v.* Briggs.]

thence southwardly about 1200 feet, eastwardly 80 feet, north-wardly 400 feet to the terminus of the railroad, and along the river and over Hays's land, northwardly 800 feet to the beginning.

The prayer was for viewers to view the route for the railroad, and also the premises described for the wharf and landing, and make report of their proceedings, &c. Viewers were accordingly appointed.

The viewers reported that the "railway is necessary and useful to the said Thomas W. Briggs for public and private purposes," and assessed damages for the several landholders, amongst others to James H. Hays for the construction, &c., of the road through his land at $5182.68. The viewers reported that they had "marked off a wharf of sufficient capacity to accommodate the trade of said railroad," viz. : beginning at the river, thence down the same northwardly 600 feet, thence westwardly 80 feet, thence southwardly 600 feet, thence eastwardly 80 feet to the beginning, the same having a front of 600 feet on said Monongahela river, and extending back, preserving the same width from same river 80 feet, being the upper half of lot of land marked on the map, &c., of 1200 feet by 80 feet." They assessed the damages to be paid to Hays for this land at $30,750. They further reported that no part of this land was necessary for the use of Hays, &c.

Hays appealed from the report of the viewers.

Briggs filed no exceptions, nor did he appeal from the report of the viewers.

Upon this appeal the court directed an issue, in which Hays should be plaintiff and Briggs defendant. In the issue the plaintiff made the following averments :—

1. That his damage by the railroad would be $20,000.

2. And by taking the wharf $150,000.

3. That plaintiff and not the defendant had the exclusive right to the location for a railroad described in said petition, because he, the said plaintiff, says, that being the owner of lands containing coal, lime-stone, &c., situate within three miles of the Mononga-hela river, he surveyed, defined on the ground and adopted finally, the said location for the route of a railroad which he intended, and still intends, to construct from his said coal-lands to the said river, for the purpose of transporting over the same his said coal ; and that said location was made by him in manner aforesaid, and for the purpose aforesaid, before said defendant had surveyed, marked and adopted finally said location as the route of the pro-posed road, wherefore said plaintiff says that he, the said defend-ant, ought not to have or maintain the said proceeding for a lateral railroad as aforesaid.

4. That said land of plaintiff lying between the Pittsburg, Virginia and Charleston Railroad and the river aforesaid, is not the subject of appropriation by a stranger to the purpose of a

[Hays v. Briggs.]

lateral railroad under the several Acts of Assembly, because he says said acts do not authorize the construction of such a railroad across any one of the series of public highways mentioned therein, in order to reach a more distant terminus, wherefore said plaintiff says said defendant is not entitled to construct said proposed railroad over said area of ground, or to have or maintain his said proceeding to that end.

5. That said viewers marked off and allowed to said defendant for a wharf or landing, a larger area than is necessary for that purpose, and more extensive than the Act of Assembly authorized.

6. That the said wharf or landing as aforesaid is necessary to the plaintiff for his own uses or purposes.

7. That the said wharf or landing as aforesaid is not necessary and useful to the defendant for public or private purposes.

8. That the lateral railroad mentioned and set forth in said petition is not necessary and useful for public or private purposes.

9. That the petitioner, Thos. W. Briggs, is not the owner of the coal and coal-mines mentioned and set forth as belonging to him in his aforesaid petition.

The defendant denied that the land mentioned in the first paragraph of the issue was of the value of $20,000. He denied all the averments in the paragraphs from 2 to 8 inclusive.

He averred that he was the owner of the property set forth in the 9th paragraph.

. The issue was tried March 12th 1873, before Kirkpatrick, J. On the trial Briggs, the defendant, by leave of the court, and under objection and exception, amended his petition as to the extent of the landing on the Monongahela river as follows :—

" He disclaims any desire to take or appropriate, in this case, the following described portion of the landing or wharf mentioned or set out in his said petition, namely, beginning on the said river at the western or lower end of said landing, as in his said petition named and marked on his plan attached thereto ; thence running, &c., * * * and thence down said river 367 feet to the place of beginning. But as to the residue of said wharf or landing (excluding the portion last described, viz.: 367 feet in length and 80 feet in width), he claims in this case to take and appropriate the same for the uses and purposes of his said proposed lateral railroad."

The testimony in the case was very voluminous, the great proportion of it bearing on the necessity for the road and landing— and the necessity of Hays for the landing "for his own uses and purposes."

On the question as to the amount of damages, Briggs, the defendant, offered to prove by A. D. Smith, " that in 1859 he sold to James H. Hays a portion of river-landing on the south side of the

[Hays *v.* Briggs.]

Monongahela, on Pool No. 1, close to the landing or wharf proposed to be acquired by said Briggs, the price at which it was sold, and that since said sale the said landing. so sold to Hays has increased in value from that time until the time of filing the petition in this case, the rate of increase in value, from year to year, of said landing, what the cash value of the proposed landing was at the time of the filing of said petition, to be followed by evidence as to the increase generally of landings on Pool No. 1, for some years prior to the filing of said petition, to show the value of the proposed landing at the time said Briggs sought to acquire it by the filing of his petition."

The evidence was objected to by the plaintiff, admitted by the court and a bill of exceptions was sealed.

The witness testified as to the matters inquired of in the question.

The defendant called Alexander Love, and, after preliminary inquiries, proposed to ask him: "whether he has a landing in Pool No. 2, on the Monongahela river, one-half mile below Elizabeth, when he obtained the same, and the price paid for it; and, further, what the landing proposed to be taken by Thomas W. Briggs is fairly worth in the market, as compared with that of the witness."

The plaintiff objected to the offer, it was admitted by the court and a bill of exceptions sealed.

The witness testified that he had a right of way granted for a lateral railroad, and stated also the amount of damages he had to pay under an assessment by viewers. The landing was about fifteen miles from the landing claimed by Briggs.

The defendant called Joseph Walton, who owned the uppermost coal works on Pool No. 2, about seventeen miles above the landing in controversy, and proposed to ask him, "what he paid for the 1800 feet of landing alluded to in his evidence, at the head of Pool No. 2, and relatively what the fair market value of the river-landing proposed to be taken by said Briggs is worth as compared with it and other river landings near said Briggs's proposed landing."

The plaintiff objected to the offer, it was admitted by the court and a bill of exceptions sealed.

The witness testified as to the matters inquired of in the offer.

The plaintiff called P. C. Devlin, who, having testified much at large as to the questions raised by the issues, was asked by plaintiff "what the 300 acres of coal he has just spoken of belonging to James H. Hays, which should be taken out by his railroad down Beck's run, are worth, in connection with the landing which the defendant proposes to appropriate, and what they would be worth if the landing was taken from Hays."

The offer was objected to by the defendant, rejected by the court and a bill of exceptions sealed.

[Hays *v.* Briggs.]

Plaintiff offered "the report of the viewers, so far as the same relates to the area of ground allotted to said Briggs as a wharf or landing, at the terminus of his proposed road in connection therewith, for the purpose of showing how much ground was actually allotted by the viewers for the purpose aforesaid."

The defendant objected to the offer, it was rejected by the court and a bill of exceptions sealed.

The following are points of the plaintiff with their answers:—

2. Inasmuch as the uncontradicted evidence in the cause shows that the proposed lateral railroad is intersected between the terminal points thereof, where it traverses the land of said Hays, a few hundred yards from the Monongahela river, by the Pittsburg, Virginia and Charleston Railway; that said railway was located finally over said land in the fall of 1869, the lettings made, and the work of construction begun in June 1871, and is now and has been for six months past in active running operation from its terminus on the Pan Handle road eastwardly along the valley of the Monongahela for the distance of ten miles, the said Briggs has no authority under the lateral railroad law, to construct or operate said proposed road over the land of said Hays intermediate said public railway and said river, or to appropriate any portion thereof for a wharf or landing.

Answer: "This point is declined. The mere fact of the intersection of the proposed lateral railroad by the Pittsburg, Virginia and Charleston Railway, as suggested by the point, would not of itself take away the authority of the petitioner to construct his lateral railroad over the lands of J. H. Hays, between the said Pittsburg, Virginia and Charleston Railway and the Monongahela river, nor would it of itself prevent his appropriation of a portion of the same for a wharf or landing providing he has the authority otherwise so to do."

3. The proposed lateral road being intersected or cut in manner aforesaid, between its terminal points, the continuity of it is thereby destroyed, and the said petitioner has failed in his case, both in respect to road and landing.

4. The viewers alone, and not the court and jury, have the power to mark off a wharf or landing to be allotted to a petitioner for a lateral railroad; and the report of the viewers marking off a wharf or landing in this case, not having been put in evidence, the subject of a wharf or landing is not before the jury, and they have no power to render a verdict in relation to it.

These points were declined.

5. The Acts of Assembly relating to the acquisition of wharves or landings, do not authorize the taking of private property for harbors, either in connection with, or independently of a lateral railroad; and if the said Acts of Assembly do authorize such appropriation of private property, they are, both in the view of

[Hays *v.* Briggs.]

the Constitution of the United States, and of the state of Pennsylvania, void and of none effect.

Answer : " Affirmed with the qualification to the 6th point."

6. All the ground the Acts of Assembly authorized to be taken for a wharf or landing is just so much as shall be reasonably necessary for loading or unloading such craft as usually navigate the water on which the lateral railroad terminates, and no more : they do not authorize the taking of ground for harbors for either empty or loaded craft.

Answer : " We cannot say that we are prepared to affirm, and so must decline this point as it is presented. We consider it too broad. We are however of opinion, and so instruct you, that the amount of ground which may be taken for a wharf or landing, under the provisions of the Act of Assembly, is such and so much as will be of sufficient capacity to accommodate the trade of the lateral railroad, so much and no more than is reasonably necessary to a proper, fair and legitimate use, occupation and exercise of the privileges and benefits of the road so created. Less than this we think would defeat the clearest purposes and intention of the statute, and more especially that portion of its provisions which the wharf and landing feature of the act was intended to subserve ; whilst a greater allowance would be a clear infringement of the right of private property and in manifest derogation of a fair and proper interpretation of the letter and spirit of the law, and should receive no encouragement by the verdict of the jury. These limitations we beg the jury to apply to our affirmation of the last or fifth point."

7. The burden of showing the necessity for said proposed road is on the petitioner, and as there is no evidence in the cause showing any necessity, general or special, for extending the same over and beyond the Pittsburg, Virginia and Charleston Railway to said river, the case has failed in respect to that portion of said road, and also in respect to the wharf or landing, and the court will so instruct the jury.

Answer : " We have already in our general charge affirmed the proposition of law claimed in this point, and do so now that the burden of showing the necessity for the proposed road is on the petitioner. This proposition and this portion of the point cannot be gainsaid. But we decline, as further requested, to instruct you that there is no evidence in the cause showing any necessity general or special for extending the proposed lateral railroad over and beyond the Pittsburg, Virginia and Charleston Railway to the Monongahela river. This we leave as a question of fact exclusively to the jury to be by them determined from all the evidence in the cause, again repeating that the burden of showing this fact, as also the fact of the necessity of the road, rests with and is by the law wholly put upon the petitioner."

[Hays *v.* Briggs.]

17. The páper filed by Thomas W. Briggs, purporting to be a disclaimer of his right to take the lower portion of said proposed landing, is in legal effect a discontinuance of the entire proceedings as respects both road and landing, and if not of both, of the landing at least.

Answer: " This point is declined."

The court in the charge, amongst other things, said:—

* * * " [It will be observed the words of the statute are ' uses and purposes;' thus, as it would seem to me, suggesting a something in the present and also in the future. A *use* of a thing signifies and means the acting, handling or employing in any manner, and for any purpose, but especially for a profitable purpose, thus implying the *immediate* or *present* occupation or enjoyment of anything. A *purpose* means and implies intention, design; that which a person sets before himself as an object *to be* reached or accomplished, the end or aim to which the view is directed in any plan, measure or exertion. Thus implying something contemplated or to be done *in the future.* Now has the owner of this wharf or landing satisfied you that it is so necessary for him, for his own fair, proper and legitimate uses and purposes ? that is, not only for his *present* or immediate uses, but also for his *future* designs, plans or purposes ? We are of the opinion, and so instruct you, that he is entitled under the statute to the benefit of both of these terms in their largest and most comprehensive sense. We think the statute so intended.] If he has, as we have already told you, this ends all other or future controversy about the wharf or landing, and it has no other or further part nor lot in your deliberations in regard to it. We express no opinion, but leave it wholly to the jury, by whom, and by whom only, it is to be determined. But it may be, as claimed by the petitioner Briggs, that the owner has wholly failed in so satisfying you. If he has, then other and important questions present themselves. [The first question naturally to be considered by you, then, will be (assuming that you have found that the land is not necessary to the owner, and that the petitioner Briggs is entitled to one), how much of a landing shall be allotted to him ? Shall it be the whole, as claimed —that is twelve hundred feet, less the three hundred and sixty-seven feet disclaimed by him in front of Williamsburg, which would leave eight hundred and thirty-three feet—or shall it be any other distance less than this, and if so, how much less. This also is a question wholly for the jury, in the light of *all* the evidence bearing upon it. They are not limited, and may allot such and so much as they may deem just and right to a proper and reasonable use, occupation and enjoyment of the lateral railroad, in and of which, and to the fair, reasonable and proper enjoyment and use of which the wharf or landing was and is intended. This we

[Hays *v.* Briggs.]

have said in answer to one of defendant's points, and so say here and now as our instructions to you in this regard, should be the rule and measure by which you should allot and set apart the wharf or landing to the petitioner, in case you come to the conclusion from all the evidence that he is fairly and justly entitled to one.]" * * *

The jury found a special verdict, answering the several issues categorically, viz. :

1 and 2. They found that Hays, the plaintiff, owned the land proposed to be taken for the railroad and for the wharf.

3. They found for Briggs.

4. So far as there were facts to be found in this issue, they found for Briggs.
* * * * * *

6 and 7. They found that the wharf or landing described in the petition of Thos. W. Briggs in this case, less the amount thereof which said Briggs on the trial of this case by writing filed of record, disclaimed any right to take and appropriate, viz. : 367 feet in length by 80 feet in width, from the western end of said landing, is not necessary to said Jas. H. Hays for his own uses or purposes ; and that said wharf or landing in said petition mentioned, less the amount thereof, viz. : 367 feet in length by 80 feet in width, disclaimed as aforesaid, is necessary and useful to Thos. W. Briggs for public and private purposes.

8 and 9. They found that the lateral railroad mentioned and set forth in said petition, is necessary for public and private purposes ; and that the said Thos. W. Briggs is the owner of the coal and coal-mines mentioned and set forth as belonging to him in his aforesaid petition.
* * * * * *

" And we further find and mark off from the wharf and landing proposed in the petition, a wharf of sufficient capacity to accommodate the trade of the said railroad, which we find to be as follows, viz. : Beginning at the low-water line of the Monongahela river where the line of the lateral railroad strikes the river ; thence up the said river, &c. (by several courses and distances), to place of beginning, being a strip of ground extending back 80 feet from low-water mark, and extending from said lateral railroad up the river 400 feet, and from the said lateral railroad down the river 435.79 feet to the line of the village of Williamsburg, making 835.79 feet front on said river by 80 feet back from the same: The said wharf or landing now marked off for said Thomas H. Briggs being the residue of the wharf or landing mentioned and described in said petition, after striking off the portion thereof which said Thomas W. Briggs, by writing filed of record in this case, disclaims any right to take. And we do further find that the said landing, so found and marked off, is not necessary to the owner

[Hays v. Briggs.]

thereof, James H. Hays, for his own uses and purposes, and we find and fix upon the sum of $28,668.90 to be a compensation just and suitable to be paid to James H. Hays for the use of said piece of ground owned by him, and included in the last aforesaid description."

Judgment having been entered on the verdict, the plaintiff Hays removed the record to the Supreme Court by writ of error.

He assigned the following errors :—

2. Admitting the report of the viewers in evidence.

3. Refusing the plaintiff's 4th point.

4 and 8. Charging as in the part of the charge secondly enclosed in brackets.

6 and 7. The answers to the plaintiff's 5th and 6th points.

9 and 10. The answer to the plaintiff's 2d and 3d points.

11. The answer to the plaintiff's 7th point.

12. Charging as in the part of the charge first enclosed in brackets.

14, 15, 16. Admitting the testimony of A. D. Smith, A. Love and J. Walton on the subject of damages.

17. Rejecting the testimony of P. C. Devlin on the same subject.

19. Allowing the defendant, Briggs, to amend his petition.

20. Denying the plaintiff's 17th point.

*M. W. Acheson* and *G. P. Hamilton* (with whom was *T. M. Marshall*), for plaintiff in error.—The power of locating the road is with petitioner alone : Act of May 5th 1832, Pamph. L. 501, 2 Br. Purd. 1235, pl. 121, *et seq.* Neither the viewers nor the traverse jury have any power over the road as located by the petitioner : Hays *v.* Risher, 8 Casey 169 ; Brown *v.* Peterson, 4 Wright 373 ; Acts of 24th April 1843, sect. 10, Pamph. L. 361 ; 6th January 1848, sect. 3, Pamph. L. 1, 2 Br. Purd. 1239, 1240, pl. 139, 140 ; Horner and Roberts's Lateral Road, 1 Wright 333. The market value of the land at the time of filing the petition is the standard of damages : Railroad Co. *v.* Hottenstine, 11 Wright 28. The market value should be the selling price in the neighborhood : East Penna. R. R. *v.* Heister, 4 Id. 53 ; Worthen *v.* Wilmot, 30 Vt. (1 Shaw) 553.

*J. H. Hampton* and *R. Woods* (with whom were *S. Woods* and *J. Dalzell*), for defendant in error.—The Act of 1871 is a remedial statute. It enlarges the matters to be submitted to the jury, and is to be liberally construed : Dwarris on Stat. 73, 231, 236 ; Johns *v.* Johns, 3 Dow. 15 ; People *v.* Runkle, 9 Johns. Rep. 147 ; Pearson *v.* Lovejoy, 53 Barb. 407 ; Kerlin *v.* Bull, 1 Dallas 178. Landings and wharves as such have no market value, and therefore damages for them cannot be assessed by the ordinary

rule, but there must be a resort to facts in individual cases : White Deer Creek Co. *v.* Sassaman, 17 P. F. Smith 421. An opinion of the aggregate loss is evidence : Forbes *v.* Caruthers, 3 Yeates 527 ; Kellogg *v.* Krauser, 14 S. & R. 137

The opinion of the court was delivered, January 5th 1874, by

AGNEW, J.—Without following the assignments of error *seriatim* we shall notice the important questions raised in this case. The viewers allowed Mr. Briggs a strip of ground on the margin of the Monongahela river, six hundred feet long by eighty feet wide, for a wharf or landing. To this allowance Briggs filed no exceptions involving the extent of the area, so far as we have discovered. Hays, however, took an appeal principally on the ground disclosed by the issue formed upon his appeal, that the viewers laid off too large an area, that he himself needed the ground for his own uses and purposes, and that it was not necessary to Briggs for public or private purposes. In his petition Briggs had claimed twelve hundred feet on the river, and on the trial asked to amend by disclaiming three hundred and sixty-seven feet in length, and claiming to appropriate the remainder, eight hundred and thirty-three feet. On the trial the court permitted Briggs to claim, and the jury to find, this remainder, the verdict returning it as eight hundred and thirty-five feet and 29-100 front on the river, and eighty feet back from the same. In this there was error. The appeal under the Act of 17th November 1871, 2 Bright. Dig. 1241, pl. 148, was confined to the assessment of damages, the necessity of the wharf or landing to the applicant, and the necessity of the owner of the ground to retain it for his own uses and purposes ; and if the last be found the wharf or landing shall not be taken from him. The viewers, under the Act of 24th April 1843, 2 Bright. Dig. 1239, pl. 139, must go upon the ground, view it and mark off the portion of land to be allotted as a wharf or landing, and fix the compensation to the owner. The case of Horner *v.* Roberts's Lateral Railroad, 1 Wright 333, held, that the appeal extended to the question of compensation only, and not to location, or necessity. This defect in the law was remedied by the Act of 1871, so far as to extend the appeal to the questions of necessity to the applicant and necessity to the owner ; but not to, embrace that of location, which was left where it stood before, under the Act of 1843. The argument that this leaves the petitioner without remedy when the viewers allow him too little or no ground for his wharf or landing, is unfounded. The report of the viewers is subjected to the approval of the court, and this confers the right of exception upon either party. It is on this right of exception Judge Strong relies in basing the right of appeal in Horner *v.* Roberts's Road, a right given beyond the privilege of exception, as the means of having the question of compensation tried by a jury.

[Hays v. Briggs.]

If Mr. Briggs thought the six hundred feet laid off to him by the viewers were too little for his necessity, he could have filed exceptions, and if successful the court would have awarded a new view. Possibly he also might have appealed, but as to this we give no opinion. But when Hays appealed on the ground that the viewers had allowed more ground to Briggs than his necessity required for his actual railroad, the issue was confined to the six hundred feet laid off. This issue involved the necessity of the whole and every part of it, and the jury might have allowed him less, but could not allow him more, upon this issue. What might have been proper in case both parties had appealed, we do not say.

The question of a harbor for boats, is also important. The plaintiff's fifth and sixth points asked a direct instruction against the right to take ground for a harbor, distinct from the land necessary for the wharf or landing. To this request no answer in distinct terms was given, but the court declined the points as too broad. The latter part of the fifth point presented only an alternative in case the answer was adverse to the former point. The sixth point presented the question squarely that the petitioner was not entitled to take ground for a harbor for either empty or loaded craft. The purpose of a wharf or landing for loading and unloading boats engaged in the coal trade, is different from that of a harbor or place to lay up boats empty or laden. This is especially true of the coal business on the Monongahela, in view of the magnitude of the barges used and the length of time often required to keep them in harbor before a boating stage of water arrives to take them out, and to carry them down the Ohio. It appears that often before such a stage or flood occurs, these coal-barges and coal-boats are collected in large fleets and lie moored along the shore or in the river. Now, clearly the privilege of a wharf or landing to load these boats with coal from the mines was not intended to confer a right to harbor them all along the lands of others, to wait the coming freshets. The error of the court was not so much in what was said, as in what was left unsaid, when specially called to state to the jury the difference between a right to take land for wharfage or landing, and land for harborage.

The position of Mr. Hays's counsel that the lateral railroad could not pass over the Virginia and Charleston Railway to reach the slackwater navigation of the Monongahela cannot be sustained. There is nothing in the language of the law necessarily requiring such an interpretation, and certainly nothing in the reason of the thing to demand it. In going to the slackwater navigation the very words of the law are fulfilled, while the nature of the coal trade, its great magnitude and its market all demand a water transportation, and these require a reasonable interpretation of the law to make it beneficial and to accomplish its true intent in aid of trade. The question of crossing at grade, or how the crossing

24 P. F. SMITH—25

[Hays *v.* Briggs.]

shall be effected, concerns different parties. The point we decide is that the lateral railroad may pass beyond a carrying railroad to reach a canal or slackwater navigation.

We discover no real error in the definition the court gave to the words in the act—" his own uses and purposes." The intention of the Act of 1871 was to protect the owner of the ground in the enjoyment of it, when he himself needed it. It is only when his uses and purposes do not require it to be retained, that another is permitted to divert it to his use. The owner of ground on the margin of a river, necessary for the loading of coal from his own immediately adjacent coal-lands, ought not to be deprived of its use, merely because he has not yet constructed his wharves and his railroad to them; if it be manifest that this is the very purpose for which he seeks to retain it. If it be necessary to bring his own products to market when he opens his mines, clearly he should not be deprived of his right to the enjoyment of his own property in a reasonable time and manner. He may not, perhaps, like the dog in the manger, keep others at bay, and yet intend to make no use of the thing itself. But if it be a bonâ fide intended use, the law should not be so construed as to trench upon his right to enjoy his own reasonably in his own way and at his own time. The want of capital, encumbrances and many other circumstances may compel him to defer present improvement.

In regard to the exceptions to the offers of evidence relating to the damages, we think in some of them the court opened the door to a wider range than the law permits. The rule laid down in East Penn. R. R. *v.* Heister, 4 Wright 53, and followed in Pittsburg, Virginia and Charleston Railroad Co. *v.* Rose, at this term, *antea* 362, is the value as estimated by witnesses in view of its location, productiveness or other uses not speculative, or as denoted by the market value or selling price of lands in the neighborhood; and this selling price I understand to be the general selling price, and not that of a particular sale. It will not do to fix the market value by special, and it may be exceptional cases. Of such a test Thompson, J., said in Heister's case, it will not do, for, if allowed, such special instance adduced on one side must be permitted to be assailed, and its merits investigated on the other; and thus, there would be as many branching issues as instances, which, if numerous, would prolong the contest interminably. Such testimony does not disclose the public and general estimate. The offer to prove, by A. D. Smith, a sale in 1859, was incompetent, not only because of its repugnance to the rule as to special instances, but by reason of its long antecedent time, and the necessity of filling up the gap in time, by evidence to bring it down to the proper date. The proposed testimony of Alexander Love was objectionable as evidence of a special instance, and also because it was the case of an appraisement by viewers involving all

[Hays v. Briggs.]

the circumstances of that case, and the benefits to be set off. The testimony of Joseph Walton was incompetent for similar reasons. The testimony of P. L. Devlin, so far as it bore on the question of the value of the three hundred acres as a measure of damages, was not competent; but as it had also a bearing on the question of the necessity of James H. Hays to retain the landing for the benefit of his adjacent three hundred acres, it may have had some relevancy. In regard to the distances of the different landings from the *locus in quo*, we do not say they were too far off to assist the witnesses in forming their judgment of the general market value of grounds in the neighborhood for such uses. Wharves and landings are confined to the river shore, and the business along the Monongahela is similar to that of Mr. Briggs. A witness estimating the general market value of such lands in the neighborhood may be permitted to range further from the lands in question than in a case of ordinary neighborhood value of farms or lots. But his range of thought in estimating a general market value is a very different thing from his being permitted to testify to special instances of sales at any distance, near or remote.

Judgment reversed, and a *venire facias de novo* awarded.